## CAU v. TEXAS & P. RY. CO.

(Circuit Court of Appeals, Fifth Circuit. January 7, 1902.)

### No. 1,081.

CARRIERS OF GOODS — LIMITATION OF LIABILITY FOR LOSS BY FIRE — VALIDITY.

A shipper is bound by a provision in a bill of lading exempting the carrier from liability for loss of the goods by fire, where he was chargeable with knowledge that the bill contained such clause, and made no objection thereto, and it is not shown that the loss resulted from the carrier's negligence.

In Error to the Circuit Court of the United States for the Eastern District of Louisiana.

B. K. Miller, for plaintiff in error.

N. W. Finley, W. W. Howe, W. B. Spencer, and C. P. Cocke, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PER CURIAM. This was an action by the plaintiff in error to recover the value of certain cotton delivered to the defendant in error to be transported from Texarkana, Tex., to the port of New Orleans, La., at an agreed charge for freight of 60 cents per 100 pounds. The petition alleged that, in evidence of the contract, the company delivered to the plaintiff in error its certain bills of lading; that while the bales of cotton were awaiting further shipment, but after they had been received by the railway company as a common carrier and were in its possession as such, and after it had issued its bills of lading to carry the same, the whole of the cotton was destroyed by fire. The petition alleged, further, that by the third clause of the bills of lading the railway company attempted to limit its liability as a common carrier, declaring that it should not be liable for any damages to, or destruction of, the cotton caused by fire; that this clause is wholly inoperative, null, and void against the petitioner, on the following grounds: (1) That plaintiff did not receive any consideration from the railway company for such limitation of its common-law liability; (2) that the destruction of the cotton by fire was due to, and caused by, the negligence of the company, its agents and servants; (3) that the cotton was received by the railway company prior to the issuance of the bills of lading, and it was without authority, after the receipt of the cotton as a carrier, to limit its liability under the common law. The answer, besides the general issue, set up specially the terms of the third clause of the bills of lading, which, so far as necessary to recite, expressed "that neither the Texas & Pacific Railway Company nor any connecting carrier handling said cotton shall be liable for damage to, or destruction of, said cotton by fire." The case came on for trial, and, the evidence having been closed, counsel for the defendant moved the court to direct a verdict in favor of the defendant, which motion was granted, and the jury, under the direction of the judge, returned their verdict, "We, the jury, find a verdict in favor of the defendant," upon which judgment was duly entered. In act-

ing on the plaintiff's motion for a new trial, the learned judge of the circuit court said:

"The sole question in this cause is whether the clause in the bill of lading exempting the carrier from liability for loss by fire is binding on the plaintiff. No negligence is charged against the carrier. The shipment was made by the plaintiff's agent, an intelligent and experienced buyer and shipper of cotton. He is presumed to have known the law, and to have been aware that the carrier, if he so desired, was compelled to take the freight under its common-law liability, without the fire clause. Furthermore, it was proven that prior to the shipment plaintiff's agent called for blank bills of lading, took them to. his office, and in his own time filled them, and then presented them for signature by the carrier. This fact, together with the general knowledge which the plaintiff's agent must have had from his previous experience in shipping cotton, makes it certain that as matter of fact the plaintiff's agent knew of and assented to the fire clause. Shippers have been held bound by the fire clause in a bill of lading, even when they claimed that they did not know that the clause was in the bill of lading, provided they were afforded a full and fair opp rtunity to acquaint themselves with the contents of the bill of lading. Failure to read the bill of lading has been held, under such circumstances, not to avail the shipper. But, of course, the present cause is one in which, as matter of fact, the shipper knew, or must be held to have known, that the bill of lading contained the fire clause. I am clear that there is nothing in the evidence which would invalidate the bill of lading for duress, concealment, fraud, or misrepresentation by the carrier."

So far as it affects this case, the statement of the law embraced in the foregoing extract from the trial judge's opinion is fully supported by the leading case of York Mfg. Co. v. Illinois Cent. R. Co., 3 Wall. 107, 18 L. Ed. 170, which has been cited with approval by the supreme court as late as the case of The Queen of the Pacific, 180 U. S. 49, 21 Sup. Ct. 278, 45 L. Ed. 419.

We have carefully examined the record submitted to us on this hearing, and concur in the view taken by the trial judge that there is nothing in the evidence which would invalidate the bills of lading for duress, concealment, fraud, or misrepresentation by the carrier.

The judgment of the circuit court is therefore affirmed.

CARRIERS OF GOODS — LIMITATION OF LIABILITY FOR LOSS BY FIRE—VALIDITY.
    A shipper is bound by a provision in a bill of lading exempting the carrier from liability for loss of the goods by fire where he was chargeable with knowledge that the bill contained such clause, and made no objection thereto, and it is not shown that the loss resulted from the carrier's negligence.

B. K. Miller, for plaintiff in error.

