# THE VALLESCURA.
## No. 249.

Circuit Court of Appeals, Second Circuit.
April 2, 1934.

See, also, 43 F.(2d) 247.

Loomis & Ruebush, of New York City (Homer L. Loomis, of New York City, of counsel), for claimant-appellant.

Joffe & Joffe, of New York City (Joseph Joffe and Louis Joffe, both of New York City, of counsel), for libelants-appellees.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge (after stating the facts as above).

While there is some dispute on this appeal as to the facts, no serious difficulty is presented on that score. It is undisputed that onions are an extremely perishable cargo and must be adequately ventilated to prevent decay. These onions were laden in part at Gandia and in part at Denia, in Spain, in apparent good order and condition and bills of lading were issued for them on that basis. It is undisputed that the ship encountered rough weather on the voyage which not only delayed her passage, but required keeping the onions without ventilation for periods long enough to cause considerable decay. The master testified in his first deposition that he had the ventilators and hatches closed some nights in good weather, and, while there was an attempt to deny and explain this, including a claim that the first deposition had been incorrectly translated, the District Court found nevertheless that the onions were negligently deprived of ventilation when the hatches and

ventilators were closed in good weather. We accept the facts as found. That there was negligence in needlessly failing to ventilate the onions during a part of the voyage is plain enough. This negligence was related primarily to the care of the cargo and not to the management of the ship. It was therefore not an error in management and navigation but a failure in the performance of a duty owed to cargo from which the ship is not relieved from liability under the Harter Act. (46 USCA §§ 190–195). Andean Trading Co. v. Pacific Steam Navigation Co. (C. C. A.) 263 F. 559; The Edith (C. C. A.) 10 F.(2d) 684; Barr v. International Mercantile Marine Co. (C. C. A.) 29 F.(2d) 26.

The other disputed question of fact has to do with the notice of claim. A written notice was given too late. The libelants introduced proof, which the trial judge believed, that an oral notice of claim was given previously to the written notice and within the time prescribed. This was purely a question of fact depending upon the credibility of witnesses who testified in open court, and, as we have often said, a trier of the facts who has seen the witnesses has such a better opportunity to decide such questions than do we that his decision will be upheld unless a mistake is clearly shown. None has been, and the notice of claim is considered sufficiently proved.

It does not follow, however, that the libelants are entitled to recover all of the damage to the onions. In proving the damage, it appeared that all of it was due to decay. So the same proof which showed damage put it directly within one of the exceptions in the bills of lading. Without more there could be no recovery at all because at least a prima facie defense was made out by the decay exception. The libelants met this prima facie defense by proof of negligent care of the cargo, but did not show either that all the decay was due to such negligence or what part was caused by it.

The special master and the District Judge who entered the final decree were both of the opinion that the ship was liable for all the damage unless it could show how much was due to causes other than its negligence on the theory that, where the negligence of a ship has contributed to the damage to cargo and for that reason alone it has in part lost the benefit of a bill of lading exception, it would be more equitable, as the special master said, "to compel the one whose fault has caused the confusion to make the proper apportionment or bear the whole loss." Generally speaking, we have no quarrel with this as an equitable principle. There appear to be paramount considerations in a case of this nature, however, which require a reversal of the result which was reached without giving effect to them.

Since the proof showed that all the damage was due to decay, it was the kind of the damage, regardless of the cause of the damage, which put it all prima facie within the exception in the bills of lading and to that extent relieved the ship from all liability. Though the burden to bring the damage within the prima facie scope of the exceptions in the bills of lading was on the ship, Clark v. Barnwell, 12 How. 272, 280, 13 L. Ed. 985; The Folmina, 212 U. S. 354, 29 S. Ct. 363, 53 L. Ed. 546, 15 Ann. Cas. 748, the condition of the onions made other evidence to that end unnecessary. It was then incumbent upon the libelants to prove that the prima facie defense, inherent in decay damage under the exceptions in the bills of lading, was not conclusive by showing that the decay was caused in whole or in part by the ship's negligence. Proof that it had been wholly caused by the ship's negligence would have destroyed the prima facie defense. Proof that the decay was caused in part by such negligence overcame that defense pro tanto. But, as the burden was on the libelants to prove not only that the onions had been damaged but to prove recoverable damage, it was necessary to prove what damage was caused by the negligence of the ship. When it is seen that the negligence of the ship becomes important on the question of liability only in so far as it serves to defeat an otherwise good defense to this action, it seems clear that the kind of negligence which must be proved by a preponderance of the evidence is that which has caused decay that, in the language used in Clark v. Barnwell, supra, "might have been avoided by the exercise of reasonable skill and attention on the part of the persons employed in the conveyance of the goods." See, also, Western Transportation Co. v. Downer, 11 Wall. 129, 20 L. Ed. 160; Cau v. Texas & Pac. R. Co., 194 U. S. 427, 24 S. Ct. 663, 48 L. Ed. 1053; The Isla de Panay (C. C. A.) 292 F. 723. When the problem appears in this form, it is apparent that proof of negligence in this connection is not a question merely of showing that the ship did not provide adequate ventilation at all times when the weather permitted, but

of showing in addition that the onions were damaged by decay which would not have occurred in spite of inadequate ventilation in good weather. To prove this necessarily required proof which would show what decay "might have been avoided by the exercise of reasonable skill and attention on the part of the persons conveying the goods." In failing to make such proof, the libelants failed to prove any recoverable damage.

The interlocutory decree provided that the libelants recover only such damage "as was caused by closing the hatches and ventilators of the vessel at night during good weather." The burden of proof resting on the libelants under the law was thus clearly stated in the decree, and was not discharged by showing damage which apparently came within the bill of lading exceptions, though it might in part have been attributable to the negligence of the ship. Having left the cause of the decay in doubt, the libelants left the ship excused. The Isla de Panay (C. C. A.) 292 F. 723; The Bencleuch (C. C. A.) 10 F.(2d) 49.

Decree reversed.